E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| KATHLEEN PENNE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Q3 CONTRACTING, INC.; PRIMORIS SERVICES CORPORATION; DENISE TOMSICK; and TERESA BERRY,<br><br>　　　　Defendants. | Case No. _____<br><br><br>**PETITION**<br>**and**<br>**JURY DEMAND** |

**COMES NOW** the Plaintiff and, for her cause of action, states the following:

### INTRODUCTION

1.　　This is an action under the Iowa Civil Rights Act ("ICRA") challenging Defendants' illegal discrimination and retaliation.

2.　　Plaintiff Kathleen "Cassie" Penne is a resident of Warren County, Iowa.

3.　　Defendant Q3 Contracting, Inc. ("Q3C") is a Minnesota corporation and subsidiary of Primoris Services Corporation doing business in Polk County, Iowa.

4.　　Defendant Primoris Services Corporation ("PSC") is a Delaware corporation and umbrella entity doing business in Polk County, Iowa.

5.　　Upon information and belief, Defendant Denise Tomsick is a Colorado resident.

6.　　Upon information and belief, Defendant Teresa Berry is a Minnesota resident.

7.　　The acts of which Plaintiff complains occurred in Polk County, Iowa.

**EXHIBIT A**

1

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

## PROCEDURAL REQUIREMENTS

8.      On March 2, 2022, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination and retaliation against Defendants with the Iowa Civil Rights Commission.

9.      On November 15, 2022, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

10.      Plaintiff Kathleen "Cassie" Penne ("Cassie") began working for PSC on August 20, 2020.

11.      Primoris Services Corporation ("PSC") is a specialty construction and infrastructure company based in the United States, with particular focus on pipelines for natural gas, wastewater, and water.

12.      Cassie's position was a Human Resources ("HR") Generalist.

13.      Cassie supported Q3 Contracting, Inc. ("Q3C"), which is a subsidiary of PSC.

14.      Q3C is a utility construction company that provides both specific and turn-key services for its customers in the gas, oil, electric, and telecommunications industry.

15.      Cassie's duties included but were not limited to:

   a.  communicating and interpreting HR policies, practices, and procedures to leadership and employees;

   b.  collaborating with business partners from the corporate HR team, payroll, safety, and fleet teams to suport the administration of various programs and policies;

   c.  administering drug and alcohol pogram and testing;

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

    d.   assissting in creation and maintenance of drive qualification records;

    e.   assisting and counseling leadership on performance managerment matters and prepartion of proper documentation as appropriate;

    f.   investigating, researching, and preparing proper documentation related to claims of discrimination, retaliation, and other workplace issues;

    g.   cold sourcing and talent recruiting;

    h.   assiting in interviewing potential hires;

    i.   conducting new hire orientation and facilitating training to employees and leadership; and

    j.   facilitating the processing of employee transactions.

16.    Cassie supported employees in multiple work locations in the following states: Iowa, Nebraska, Indiana, Maryland, Michigan, and South Dakota.

17.    Cassie initially reported to HR Director Teresa Berry.

18.    After Denise Tomsick was promoted to the HR Supervisor position, Cassie began reporting to her.

19.    PSC's business is seasonal due to the temparate climate where many of its operations are located, with March through November being the peak months for the business.

20.    In March 2021, Cassie's workload became excessively heavy and disproportionate compared to other HR Generalists' workloads and PSC's expectations for HR Generalists.

21.    Cassie was supporting approximately 800-1,000 employees, which was at least double the number of employees that other HR Generalists were supporting.

22.    Cassie also supported more complex work locations that required more HR support, including employee relations and hiring demands.

23.     PSC's expectations for the number of employees supported by one HR Generalist was approximately 300-400 employees.

24.     Cassie was on-boarding approximately 30 new employees a week.

25.     Other HR Generalists were on-boarding approximately 5-10 employees a week, which was in line with PSC's expectations for the role.

26.     Because of her excessive workload, Cassie was forced to work nights, weekends, and fifteen-hour days to try to keep up.

27.     Senior executives and upper management at PSC noticed that Cassie's workload was excessive and that she was working an exorbitant number of hours to try to keep up.

28.     In approximately April 2021, Senior Vice President ("SVP") Jon Kelly, on his own accord, reached out to HR Director Berry about Cassie's workload to express concern and point out that their office needed additoinal HR support as the volume of work was too much for one HR Generalist to handle.

29.     In approximately late April 2021, Cassie expressed concerns with her workload to Tomsick and Berry.

30.     Tomsick and Berry agreed that Cassie's workload was too execessive for one person to handle and that certain duties needed to be shared with other HR Generalists who had smaller workloads.

31.     During the same meeting, Tomsick and Berry chastised Cassie for speaking with SVP Kelly about HR matters and accused her of "oversharing" the HR team's "dirty laundry."

32.     Cassie explained that she had not complained to SVP Kelly, nor had she shared anything with him about the HR team. Rather, SVP Kelly noticed her workload and took it upon himself to share his concerns with HR Director Berry.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

33.     On June 9, 2021, Cassie was coach-pitching at her son's baseball game when she was struck in the chest with a baseball.

34.     Cassie previously had a prophylactic double masectomy and breast augmentation surgery.

35.     Cassie went to the emergency room after she was struck to be treated for the pain, swelling, and pressure in her chest. The physicians were unable to determine whether Cassie's implants had ruptured and advised her to be examined by her breast augmentation surgeon.

36.     On June 11, 2021, Cassie had an appointment with her plastic surgeron, Dr. Katherine Billue.

37.     Due to coils and stents that were in place, Cassie could not have an MRI completed to determine whether her implants had ruptured. Dr. Billue scheduled an exploratory surgery for September 15, 2021.

38.     Cassie immediately informed Tomsick about her scheduled surgery.

39.     On June 25, 2021, Cassie had another appointment with Dr. Billue because she was experiencing excessive pain, liquid filling in her armpit, and pressure on her chest and lungs.

40.     Dr. Billue ordered more imaging to determine whether there was a rupture.

41.     Cassie had an ultrasound appointment on July 21, 2021.

42.     At the appointment, Dr. Billue discovered that both of Cassie's implants had ruptured and she needed emeregency surgery on July 30, 2021.

43.     Cassie updated Tomisck the next day about her emegency surgery and did her best to get her work assignments in order before leaving for surgery.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

44.     Cassie was able to complete all her assignements except for data-entering updated licensure documents (drivers' licenses and DOT medical cards) because she did not have enough time.

45.     Cassie briefed and prepared two other HR Generalists with where she stored the licensure documents and what orienatations were set up so they could easily take over those duties while Cassie was out for surgery and recovery.

46.     On July 22, 2021, Cassie submitted to Tomsisck a request for leave under the Family Medical Leave Act ("FMLA") starting July 30, 2021.

47.     In her request, Cassie informed Tomsick that she would be on leave after surgery for at least two weeks.

48.     On July 26, 2021, Cassie submitted a physican completed workability form documeting her need for surgery and restricting her from work until she was cleared by her physician.

49.     Cassie had bilateral breast reconstruction revision surgery on July 30, 2021.

50.     Cassie's surgery involved incisions made in her groin and stomach, and liposuction performed on her legs. As a result, she experienced extreme pain in her chest, legs, groin, and stomach after surgery and had difficulty walking for the first few weeks after the procedure.

51.     Dr. Billue advised that Cassie's full recovery from surgery would last approximately six to eight weeks, possibly longer, and that Cassie could not work until she was released by Dr. Billue.

52.     On August 17, 2021, Dr. Billue released Cassie to work with the following restrictions: no repetitive twisting, standing, pulling, or pushing; maximum lift of 10 pounds; and may work eight-hour days.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

53.     Dr. Billue recommended that Cassie only work fours a day for the first few weeks, but Cassie requested that she be released to work eight hours because she wanted to return to work.

54.     Dr. Billue released Cassie to work eight-hour days as long as she was not in excessive pain. Dr. Billue instructed Cassie to work shorter days if she was in pain or needed rest.

55.     Cassie sent the release to Tomsick.

56.     Cassie also relayed Dr. Billue's advisements about working fewer hours if she experienced excessive pain or exhaustion.

57.     Cassie requested that she be able to work from home, where her work station could be adjsuted to comfortably accommodate Cassie's restrictions while she recovered.

58.     Tomsick refused to let Cassie work from home.

59.     On August 23, 2021, Cassie returned to the office.

60.     Cassie's computer and phone were shut off while she was on leave, and it took until 3 p.m. in the afternoon to get them back up and running.

61.     After Cassie returned to work with restrictions, Tomsick began giving Cassie contradictory directions and being overcritical of Cassie's work.

62.     During the first full week of her return, Cassie was assigned approximately 60 requests for employees' random drug screenings in her email inbox.

63.     Other HR Generalists were assigned half that amount.

64.     Cassie complained to Tomsick about the volume of requests, who agreed there were too many for one HR Generalist to handle.

65.     Tomsick dispersed half of Cassie's requests among other HR Generalists to even out the workload.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

66.     Tomsick also instructed Cassie to temporarily ignore the remaining requests so she could prioritize completing the entry of licensure documents into the system.

67.     Cassie followed Tomsick's instructions and prioritized the licensure documents.

68.     A few days later, Tomsick berated Cassie for not tending to the drug screening emails that she had directed Cassie to ignore.

69.     Cassie immediately addressed the drug screening requests and had them all scheduled and taking place within 48 hours.

70.     Despite instructing Cassie to address the drug screening requests immediately, Tomsick then criticized Cassie for not giving the employees more than 48 hours' notice.

71.     On September 2, 2021, Cassie had a follow-up appointment with Dr. Billue because she ws still in pain and her legs were very swollen.

72.     Dr. Billue determined that Cassie was using her legs too much too early after her surgery and instructed her to rest more and elevate her feet.

73.     Cassie informed Tomsick that she was having difficulty working the full eight-hour days because she was experiencing excessive pain and exhaustion. Cassie relayed to Tomsick that Dr. Billue advised her to rest more and elevate her feet.

74.     Tomsick refused to reduce Cassie's hours or let her work from home where she could more easily elevate her feet while working.

75.     No one from PSC or Q3C ever discussed potential accommodations with Cassie.

76.     No one from PSC or Q3C engaged in the interactive process with Cassie.

77.     On Friday, September 3, 2021, HR Director Berry emailed the entire HR Departemnt saying the employees could leave at 2 p.m. for the Labor Day holiday weekend.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

78.     Tomsick called Cassie and specifically prohibited her from leaving early like everyone else, claiming that Cassie was not in a good place with her work to leave early.

79.     Tomsick's accusations about Cassie's were untrue, and she had not talked to Cassie about issues with her performance or completing tasks.

80.     On September 14, 2021, Tomsick fired Cassie.

81.     Tomsick said Cassie was being fired because Tomsick could not trust Cassie to get her work done.

82.     Cassie asked Tomsick if she was firing Cassie because she could not get things completed before her unexpected, emergency surgery and because she was working more slowlly due to her restricitons.

83.     Tomsick did not answer Cassie.

84.     Defendants never talked to Cassie about any issues with her performance before firing her.

85.     Defendants had never disciplined Cassie throughout her employment.

86.     Defendant Denise Tomsick was an employee and agent of Defendant Primoris Services Corporation, acting at all material times within the scope of her employment and agency.

87.     Defendant Teresa Berry was an employee and agent of Defendant Primoris Services Corporation, acting at all material times within the scope of her employment and agency.

88.     Jon Kelly was an employee and agent of Defendant Primoris Services Corporation, acting at all material times within the scope of his employment and agency.

**COUNT I**
**VIOLATION OF THE IOWA CIVIL RIGHTS ACT**
**DISABILITY DISCRIMINATION**

89.     Plaintiff repleads paragraphs 1 through 88 as if fully set forth herein.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

90.     Cassie suffered from one or more physical impairments, including from bilateral extracapsular rupture in her chest and associated treatments, complications, and symptoms, which substantially limited one or more of her major life activities.

91.     Plaintiff had a record of one or more physical impairments, including but not limtied to bilateral extracapsular rupture in her chest and associated treatments, complications, and symptoms, which substantially limited one or more of her major life activities.

92.     Absent ameliorative measures, Plaintiff's physical impairments would continue to limit one or more of her major life activities.

93.     Cassie was disabled within the meaning of the Iowa Civil Rights Act.

94.     Alternatively, Defendants percevied Cassie to be disabled.

95.     Cassie was able to perform the essential functions of the HR Generalist position or a substantially equivalent position with or without reasonable accommodations.

96.     Defendants discriminated against Cassie in violation of the Iowa Civil Rights Act.

97.     Cassie's disability or record of a disability or perceived disability was a motivating factor in Defendants' decision to fire her.

98.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to emotional distress and lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable and injunctive relief, for prejudgment and postjudgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## RETALIATION

99.     Plaintiff repleads paragraphs 1 through 98 as if fully set forth herein.

100.     Cassie engaged in protected activity by the Iowa Civil Rights Act, including but not limited to when she requested a reasonable accommodation for her disability and otherwise opposed practices made unlawful by the Iowa Civil Rights Act.

101.     Defendants retaliated against Plaintiff and fired her.

102.     Plaintiff's protected activity was a motivating factor in Defendants' retaliation against her.

103.     As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to, emotional distress and lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable and injunctive relief, for prejudgment and postjudgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

/s/ Brooke Timmer
/s/ Kara Eischen
TIMMER & JUDKINS, P.L.L.C.
Brooke Timmer AT0008821
brooke@timmerjudkins.com
Kara Eischen AT0014904
kara@timmerjudkins.com
1415 28th Street, Suite 375
West Des Moines, Iowa 50266
Telephone: (515) 259-7462
Fax: (515) 361-5390
ATTORNEYS FOR PLAINTIFF

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| KATHLEEN PENNE,<br><br>      Plaintiff,<br><br>vs.<br><br>Q3 CONTRACTING, INC.; PRIMORIS<br>SERVICES CORPORATION; DENISE<br>TOMSICK; and TERESA BERRY,<br><br>      Defendants. | Case No. _____<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:      **DENISE TOMSICK**

      You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as a defendant in this action.  A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Kara Eischen of Timmer & Judkins, P.L.L.C., whose address is 1415 28th Street, Suite 375, West Des Moines, IA 50266. Their phone number is (515) 259-7462; facsimile number (515) 361-5390.

      You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

      If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3927.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).


                              _____

                                CLERK OF COURT<br>                                Polk County Courthouse<br>                                Des Moines, Iowa


**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

E-FILED  2023 FEB 08 11:44 AM POLK - CLERK OF DISTRICT COURT

## Iowa Judicial Branch

| | |
|---|---|
| *Case No.* | **LACL154898** |
| *County* | **Polk** |

*Case Title*   KATHLEEN PENNE VS Q3 CONTRACTING INC ET AL

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

---

*Scheduled Hearing :*




---

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **02/08/2023 11:44:13 AM**



*District Clerk of Court or/by Clerk's Designee of*  Polk                    *County*
**/s/ Jeremy Alvarez**

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| KATHLEEN PENNE,<br><br>Plaintiff,<br><br>vs.<br><br>Q3 CONTRACTING, INC.; PRIMORIS SERVICES CORPORATION; DENISE TOMSICK; and TERESA BERRY,<br><br>Defendants. | Case No. _____<br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:  **TERESA BERRY**

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as a defendant in this action.  A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Kara Eischen of Timmer & Judkins, P.L.L.C., whose address is 1415 28th Street, Suite 375, West Des Moines, IA 50266. Their phone number is (515) 259-7462; facsimile number (515) 361-5390.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3927.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____
CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

E-FILED   2023 FEB 08 11:44 AM POLK - CLERK OF DISTRICT COURT

**Iowa Judicial Branch**

*Case No.*    **LACL154898**

*County*    **Polk**

*Case Title*    KATHLEEN PENNE VS Q3 CONTRACTING INC ET AL

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

---

*Scheduled Hearing:*




---

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued* **02/08/2023 11:44:13 AM**



*District Clerk of Court or/by Clerk's Designee of* Polk      *County*

**/s/ Jeremy Alvarez**

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| KATHLEEN PENNE,<br><br>    Plaintiff,<br><br>vs.<br><br>Q3 CONTRACTING, INC.; PRIMORIS SERVICES CORPORATION; DENISE TOMSICK; and TERESA BERRY,<br><br>    Defendants. | Case No. _____<br><br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:       **PRIMORIS SERVICES CORPORATION**

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as a defendant in this action.  A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Kara Eischen of Timmer & Judkins, P.L.L.C., whose address is 1415 28th Street, Suite 375, West Des Moines, IA 50266. Their phone number is (515) 259-7462; facsimile number (515) 361-5390.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3927.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____
CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

E-FILED  2023 FEB 08 11:44 AM POLK - CLERK OF DISTRICT COURT

## Iowa Judicial Branch

| | |
|---|---|
| *Case No.* | **LACL154898** |
| *County* | **Polk** |

*Case Title*   **KATHLEEN PENNE VS Q3 CONTRACTING INC ET AL**

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **02/08/2023 11:44:13 AM**



*District Clerk of Court or/by Clerk's Designee of* Polk       *County*
**/s/ Jeremy Alvarez**

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| KATHLEEN PENNE,<br><br>          Plaintiff,<br><br>vs.<br><br>Q3 CONTRACTING, INC.; PRIMORIS<br>SERVICES CORPORATION; DENISE<br>TOMSICK; and TERESA BERRY,<br><br>          Defendants. | Case No. _____<br><br><br><br>**ORIGINAL NOTICE** |

TO THE ABOVE-NAMED DEFENDANT:     **Q3 CONTRACTING, INC.**

You are notified that a Petition at Law has been filed in the office of the clerk of this court naming you as a defendant in this action.  A copy of the Petition is attached to this notice. The attorneys for the plaintiff are Brooke Timmer and Kara Eischen of Timmer & Judkins, P.L.L.C., whose address is 1415 28th Street, Suite 375, West Des Moines, IA 50266. Their phone number is (515) 259-7462; facsimile number (515) 361-5390.

You must serve a motion or answer within 20 days after service of this original notice upon you and, within a reasonable time thereafter, file your motion or answer with the Clerk of Court for Polk County.  If you do not, judgment by default may be rendered against you for the relief demanded in the petition.

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at (515) 286-3927.  (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).

_____
CLERK OF COURT
Polk County Courthouse
Des Moines, Iowa

**IMPORTANT:**
**You are advised to seek legal advice at once to protect your interests.**

E-FILED  2023 FEB 08 11:44 AM POLK - CLERK OF DISTRICT COURT

**Iowa Judicial Branch**

*Case No.* **LACL154898**

*County* **Polk**

*Case Title*   KATHLEEN PENNE VS Q3 CONTRACTING INC ET AL

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential.  For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

| Scheduled Hearing: |
| --- |
| |

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/.  **Disability access coordinators cannot provide legal advice.**

*Date Issued*  **02/08/2023 11:44:13 AM**



*District Clerk of Court or/by Clerk's Designee of* Polk          *County*
**/s/ Jeremy Alvarez**

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| KATHLEEN PENNE,<br><br>          Plaintiff,<br><br>vs.<br><br>Q3 CONTRACTING, INC.; PRIMORIS SERVICES CORPORATION; DENISE TOMSICK; and TERESA BERRY,<br><br>          Defendants. | Case No. _____<br><br><br>**PETITION**<br>**and**<br>**JURY DEMAND** |

**COMES NOW** the Plaintiff and, for her cause of action, states the following:

**INTRODUCTION**

1.      This is an action under the Iowa Civil Rights Act ("ICRA") challenging Defendants' illegal discrimination and retaliation.

2.      Plaintiff Kathleen "Cassie" Penne is a resident of Warren County, Iowa.

3.      Defendant Q3 Contracting, Inc. ("Q3C") is a Minnesota corporation and subsidiary of Primoris Services Corporation doing business in Polk County, Iowa.

4.      Defendant Primoris Services Corporation ("PSC") is a Delaware corporation and umbrella entity doing business in Polk County, Iowa.

5.      Upon information and belief, Defendant Denise Tomsick is a Colorado resident.

6.      Upon information and belief, Defendant Teresa Berry is a Minnesota resident.

7.      The acts of which Plaintiff complains occurred in Polk County, Iowa.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

## PROCEDURAL REQUIREMENTS

8.    On March 2, 2022, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination and retaliation against Defendants with the Iowa Civil Rights Commission.

9.    On November 15, 2022, less than 90 days prior to the filing of this Petition, the Iowa Civil Rights Commission issued a right to sue letter with respect to Plaintiff's charges.

## FACTUAL BACKGROUND

10.    Plaintiff Kathleen "Cassie" Penne ("Cassie") began working for PSC on August 20, 2020.

11.    Primoris Services Corporation ("PSC") is a specialty construction and infrastructure company based in the United States, with particular focus on pipelines for natural gas, wastewater, and water.

12.    Cassie's position was a Human Resources ("HR") Generalist.

13.    Cassie supported Q3 Contracting, Inc. ("Q3C"), which is a subsidiary of PSC.

14.    Q3C is a utility construction company that provides both specific and turn-key services for its customers in the gas, oil, electric, and telecommunications industry.

15.    Cassie's duties included but were not limited to:

   a.   communicating and interpreting HR policies, practices, and procedures to leadership and employees;

   b.   collaborating with business partners from the corporate HR team, payroll, safety, and fleet teams to suport the administration of various programs and policies;

   c.   administering drug and alcohol pogram and testing;

2

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

    d.   assissting in creation and maintenance of drive qualification records;

    e.   assisting and counseling leadership on performance managerment matters and prepartion of proper documentation as appropriate;

    f.   investigating, researching, and preparing proper documentation related to claims of discrimination, retaliation, and other workplace issues;

    g.   cold sourcing and talent recruiting;

    h.   assiting in interviewing potential hires;

    i.   conducting new hire orientation and facilitating training to employees and leadership; and

    j.   facilitating the processing of employee transactions.

16.    Cassie supported employees in multiple work locations in the following states: Iowa, Nebraska, Indiana, Maryland, Michigan, and South Dakota.

17.    Cassie initially reported to HR Director Teresa Berry.

18.    After Denise Tomsick was promoted to the HR Supervisor position, Cassie began reporting to her.

19.    PSC's business is seasonal due to the temparate climate where many of its operations are located, with March through November being the peak months for the business.

20.    In March 2021, Cassie's workload became excessively heavy and disproportionate compared to other HR Generalists' workloads and PSC's expectations for HR Generalists.

21.    Cassie was supporting approximately 800-1,000 employees, which was at least double the number of employees that other HR Generalists were supporting.

22.    Cassie also supported more complex work locations that required more HR support, including employee relations and hiring demands.

3

23.     PSC's expectations for the number of employees supported by one HR Generalist was approximately 300-400 employees.

24.     Cassie was on-boarding approximately 30 new employees a week.

25.     Other HR Generalists were on-boarding approximately 5-10 employees a week, which was in line with PSC's expectations for the role.

26.     Because of her excessive workload, Cassie was forced to work nights, weekends, and fifteen-hour days to try to keep up.

27.     Senior executives and upper management at PSC noticed that Cassie's workload was excessive and that she was working an exorbitant number of hours to try to keep up.

28.     In approximately April 2021, Senior Vice President ("SVP") Jon Kelly, on his own accord, reached out to HR Director Berry about Cassie's workload to express concern and point out that their office needed additoinal HR support as the volume of work was too much for one HR Generalist to handle.

29.     In approximately late April 2021, Cassie expressed concerns with her workload to Tomsick and Berry.

30.     Tomsick and Berry agreed that Cassie's workload was too execessive for one person to handle and that certain duties needed to be shared with other HR Generalists who had smaller workloads.

31.     During the same meeting, Tomsick and Berry chastised Cassie for speaking with SVP Kelly about HR matters and accused her of "oversharing" the HR team's "dirty laundry."

32.     Cassie explained that she had not complained to SVP Kelly, nor had she shared anything with him about the HR team. Rather, SVP Kelly noticed her workload and took it upon himself to share his concerns with HR Director Berry.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

33.     On June 9, 2021, Cassie was coach-pitching at her son's baseball game when she was struck in the chest with a baseball.

34.     Cassie previously had a prophylactic double masectomy and breast augmentation surgery.

35.     Cassie went to the emergency room after she was struck to be treated for the pain, swelling, and pressure in her chest. The physicians were unable to determine whether Cassie's implants had ruptured and advised her to be examined by her breast augmentation surgeon.

36.     On June 11, 2021, Cassie had an appointment with her plastic surgeron, Dr. Katherine Billue.

37.     Due to coils and stents that were in place, Cassie could not have an MRI completed to determine whether her implants had ruptured. Dr. Billue scheduled an exploratory surgery for September 15, 2021.

38.     Cassie immediately informed Tomsick about her scheduled surgery.

39.     On June 25, 2021, Cassie had another appointment with Dr. Billue because she was experiencing excessive pain, liquid filling in her armpit, and pressure on her chest and lungs.

40.     Dr. Billue ordered more imaging to determine whether there was a rupture.

41.     Cassie had an ultrasound appointment on July 21, 2021.

42.     At the appointment, Dr. Billue discovered that both of Cassie's implants had ruptured and she needed emeregency surgery on July 30, 2021.

43.     Cassie updated Tomisck the next day about her emegency surgery and did her best to get her work assignments in order before leaving for surgery.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

44.     Cassie was able to complete all her assignements except for data-entering updated licensure documents (drivers' licenses and DOT medical cards) because she did not have enough time.

45.     Cassie briefed and prepared two other HR Generalists with where she stored the licensure documents and what orienatations were set up so they could easily take over those duties while Cassie was out for surgery and recovery.

46.     On July 22, 2021, Cassie submitted to Tomsisck a request for leave under the Family Medical Leave Act ("FMLA") starting July 30, 2021.

47.     In her request, Cassie informed Tomsick that she would be on leave after surgery for at least two weeks.

48.     On July 26, 2021, Cassie submitted a physican completed workability form documeting her need for surgery and restricting her from work until she was cleared by her physician.

49.     Cassie had bilateral breast reconstruction revision surgery on July 30, 2021.

50.     Cassie's surgery involved incisions made in her groin and stomach, and liposuction performed on her legs. As a result, she experienced extreme pain in her chest, legs, groin, and stomach after surgery and had difficulty walking for the first few weeks after the procedure.

51.     Dr. Billue advised that Cassie's full recovery from surgery would last approximately six to eight weeks, possibly longer, and that Cassie could not work until she was released by Dr. Billue.

52.     On August 17, 2021, Dr. Billue released Cassie to work with the following restrictions: no repetitive twisting, standing, pulling, or pushing; maximum lift of 10 pounds; and may work eight-hour days.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

53.     Dr. Billue recommended that Cassie only work fours a day for the first few weeks, but Cassie requested that she be released to work eight hours because she wanted to return to work.

54.     Dr. Billue released Cassie to work eight-hour days as long as she was not in excessive pain. Dr. Billue instructed Cassie to work shorter days if she was in pain or needed rest.

55.     Cassie sent the release to Tomsick.

56.     Cassie also relayed Dr. Billue's advisements about working fewer hours if she experienced excessive pain or exhaustion.

57.     Cassie requested that she be able to work from home, where her work station could be adjsuted to comfortably accommodate Cassie's restrictions while she recovered.

58.     Tomsick refused to let Cassie work from home.

59.     On August 23, 2021, Cassie returned to the office.

60.     Cassie's computer and phone were shut off while she was on leave, and it took until 3 p.m. in the afternoon to get them back up and running.

61.     After Cassie returned to work with restrictions, Tomsick began giving Cassie contradictory directions and being overcritical of Cassie's work.

62.     During the first full week of her return, Cassie was assigned approximately 60 requests for employees' random drug screenings in her email inbox.

63.     Other HR Generalists were assigned half that amount.

64.     Cassie complained to Tomsick about the volume of requests, who agreed there were too many for one HR Generalist to handle.

65.     Tomsick dispersed half of Cassie's requests among other HR Generalists to even out the workload.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

66.     Tomsick also instructed Cassie to temporarily ignore the remaining requests so she could prioritize completing the entry of licensure documents into the system.

67.     Cassie followed Tomsick's instructions and prioritized the licensure documents.

68.     A few days later, Tomsick berated Cassie for not tending to the drug screening emails that she had directed Cassie to ignore.

69.     Cassie immediately addressed the drug screening requests and had them all scheduled and taking place within 48 hours.

70.     Despite instructing Cassie to address the drug screening requests immediately, Tomsick then criticized Cassie for not giving the employees more than 48 hours' notice.

71.     On September 2, 2021, Cassie had a follow-up appointment with Dr. Billue because she ws still in pain and her legs were very swollen.

72.     Dr. Billue determined that Cassie was using her legs too much too early after her surgery and instructed her to rest more and elevate her feet.

73.     Cassie informed Tomsick that she was having difficulty working the full eight-hour days because she was experiencing excessive pain and exhaustion. Cassie relayed to Tomsick that Dr. Billue advised her to rest more and elevate her feet.

74.     Tomsick refused to reduce Cassie's hours or let her work from home where she could more easily elevate her feet while working.

75.     No one from PSC or Q3C ever discussed potential accommodations with Cassie.

76.     No one from PSC or Q3C engaged in the interactive process with Cassie.

77.     On Friday, September 3, 2021, HR Director Berry emailed the entire HR Departemnt saying the employees could leave at 2 p.m. for the Labor Day holiday weekend.

78.     Tomsick called Cassie and specifically prohibited her from leaving early like everyone else, claiming that Cassie was not in a good place with her work to leave early.

79.     Tomsick's accusations about Cassie's were untrue, and she had not talked to Cassie about issues with her performance or completing tasks.

80.     On September 14, 2021, Tomsick fired Cassie.

81.     Tomsick said Cassie was being fired because Tomsick could not trust Cassie to get her work done.

82.     Cassie asked Tomsick if she was firing Cassie because she could not get things completed before her unexpected, emergency surgery and because she was working more slowlly due to her restricitons.

83.     Tomsick did not answer Cassie.

84.     Defendants never talked to Cassie about any issues with her performance before firing her.

85.     Defendants had never disciplined Cassie throughout her employment.

86.     Defendant Denise Tomsick was an employee and agent of Defendant Primoris Services Corporation, acting at all material times within the scope of her employment and agency.

87.     Defendant Teresa Berry was an employee and agent of Defendant Primoris Services Corporation, acting at all material times within the scope of her employment and agency.

88.     Jon Kelly was an employee and agent of Defendant Primoris Services Corporation, acting at all material times within the scope of his employment and agency.

**COUNT I**
**VIOLATION OF THE IOWA CIVIL RIGHTS ACT**
**DISABILITY DISCRIMINATION**

89.     Plaintiff repleads paragraphs 1 through 88 as if fully set forth herein.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

90.    Cassie suffered from one or more physical impairments, including from bilateral extracapsular rupture in her chest and associated treatments, complications, and symptoms, which substantially limited one or more of her major life activities.

91.    Plaintiff had a record of one or more physical impairments, including but not limtied to bilateral extracapsular rupture in her chest and associated treatments, complications, and symptoms, which substantially limited one or more of her major life activities.

92.    Absent ameliorative measures, Plaintiff's physical impairments would continue to limit one or more of her major life activities.

93.    Cassie was disabled within the meaning of the Iowa Civil Rights Act.

94.    Alternatively, Defendants percevied Cassie to be disabled.

95.    Cassie was able to perform the essential functions of the HR Generalist position or a substantially equivalent position with or without reasonable accommodations.

96.    Defendants discriminated against Cassie in violation of the Iowa Civil Rights Act.

97.    Cassie's disability or record of a disability or perceived disability was a motivating factor in Defendants' decision to fire her.

98.    As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to emotional distress and lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable and injunctive relief, for prejudgment and postjudgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT
## RETALIATION

99.     Plaintiff repleads paragraphs 1 through 98 as if fully set forth herein.

100.    Cassie engaged in protected activity by the Iowa Civil Rights Act, including but not limited to when she requested a reasonable accommodation for her disability and otherwise opposed practices made unlawful by the Iowa Civil Rights Act.

101.    Defendants retaliated against Plaintiff and fired her.

102.    Plaintiff's protected activity was a motivating factor in Defendants' retaliation against her.

103.    As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages including but not limited to, emotional distress and lost wages, benefits, future earnings, and other emoluments of employment.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate her for her injuries and damages, for appropriate equitable and injunctive relief, for prejudgment and postjudgment interest, for attorney fees and litigation expenses, for the costs of this action, and for such other relief as may be just in the circumstances and consistent with the purpose of the Iowa Civil Rights Act.

## JURY DEMAND

COMES NOW the Plaintiff and requests a trial by jury.

E-FILED  2023 FEB 07 4:31 PM POLK - CLERK OF DISTRICT COURT

*/s/ Brooke Timmer*
*/s/ Kara Eischen*
TIMMER & JUDKINS, P.L.L.C.
Brooke Timmer AT0008821
brooke@timmerjudkins.com
Kara Eischen AT0014904
kara@timmerjudkins.com
1415 28th Street, Suite 375
West Des Moines, Iowa 50266
Telephone: (515) 259-7462
Fax: (515) 361-5390
ATTORNEYS FOR PLAINTIFF

E-FILED  2023 MAR 15 11:52 AM POLK - CLERK OF DISTRICT COURT

# AFFIDAVIT OF
# RETURN OF SERVICE

**STATE OF IOWA**                                                          **CASE #LACL154898**

**POLK COUNTY**

**CASE NAME:**                         KATHLEEN PENNE

                                          **VS**

             **Q3 CONTRACTING, INC.; PRIMORIS SERVICES CORPORATION;**
                 **DENISE TOMSICK AND TERESA BERRY**

I, the undersigned, being duly sworn on oath, do hereby depose and state that I received the
**ORIGINAL NOTICE; PETITION AND JURY DEMAND**

Received on the 13 day of March 2023; served on the 13 day of March 2023 at 1:35pm

I served the same on the within name Q3 Contracting, Inc.
At 505 5th Ave Ste. 729, **DES MOINES, IOWA**

by delivering a true and identical copy of each such item in the following manner:

_____          I served the same by delivering a copy thereof to the above personally.

_____          I served the same on the above person at the person's dwelling house or usual place

                 of abode, by there delivering a copy thereof to a member of the family, or a manager,
                 clerk, proprietor or custodian named and described below, a person who was then at
                 least eighteen years old, who resides at this address.

___X___          I served to above company, corporation, etc., by delivering a copy to the person

                 named and described below.  Said service was made at the address shown below, if
                 any otherwise at the above address.

| Service Fee | _____ | Located at | _____ |
|---|---|---|---|
| Mileage | _____ | Remarks | c/o Corporation Service Company, Registered Agent / Danielle |
| Service Charge | _____ | | _____ |

Total Charges:  $45.00                      By: _____*R Miller*_____
                                                 C Miller Investigations, Inc.

Subscribed and sworn to before by the said Raymond Miller (R. Miller)
In Polk County, Iowa on this the 15 day of March 2023
                                            By: _____*Donna C Ray*_____
                                                Notary Public for the State of Iowa



DONNA C. RAY
Commission Number 781706
My Commission Expires
December 6, 2025

E-FILED  2023 MAR 15 11:52 AM POLK - CLERK OF DISTRICT COURT

# AFFIDAVIT OF
# RETURN OF SERVICE

**STATE OF IOWA**                                                                 **CASE #LACL154898**

**POLK COUNTY**

**CASE NAME:**                            KATHLEEN PENNE

                                                         VS

                    Q3 CONTRACTING, INC.; PRIMORIS SERVICES CORPORATION;
                         DENISE TOMSICK AND TERESA BERRY

I, the undersigned, being duly sworn on oath, do hereby depose and state that I received the
**ORIGINAL NOTICE; PETITION AND JURY DEMAND**

Received on the 13 day of March 2023; served on the 13 day of March 2023 at 1:35pm

I served the same on the within name Primoris Services Corporation
At 505 5th Ave Ste. 729, **DES MOINES, IOWA**

by delivering a true and identical copy of each such item in the following manner:

_____          I served the same by delivering a copy thereof to the above personally.

_____          I served the same on the above person at the person's dwelling house or usual place
                      of abode, by there delivering a copy thereof to a member of the family, or a manager,
                      clerk, proprietor or custodian named and described below, a person who was then at
                      least eighteen years old, who resides at this address.

   X               I served to above company, corporation, etc., by delivering a copy to the person
                      named and described below.  Said service was made at the address shown below, if
                      any otherwise at the above address.

Service Fee          _____          Located at    _____

Mileage                _____          Remarks      c/o Corporation Service Company,
                                                                                 Registered Agent / Danielle
Service Charge     _____                                 _____

Total Charges:  $5.00                                        By: _____
                                                                              C Miller Investigations, Inc.

Subscribed and sworn to before by the said Raymond Miller (R. Miller)
In Polk County, Iowa on this the 15 day of March 2023        By: _____
                                                                                         Notary Public for the State of Iowa



DONNA C. RAY
Commission Number 781706
My Commission Expires
December 6, 2025